J-S44023-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| LUIS SERRANO | : | |
| Appellant | : | No. 2726 EDA 2022 |

Appeal from the PCRA Order Entered October 19, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0006365-2014

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| LUIS SERRANO | : | |
| Appellant | : | No. 2727 EDA 2022 |

Appeal from the PCRA Order Entered October 19, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0006366-2014

BEFORE:   OLSON, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED FEBRUARY 14, 2024**

Appellant Luis Serrano appeals from the order denying his timely first petition filed pursuant to the Post Conviction Relief Act[1] (PCRA).  On appeal,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

Appellant raises ineffectiveness claims against trial counsel, direct appeal counsel, and prior PCRA counsel. We affirm.

The PCRA court set forth the following factual and procedural history:

Nilzon Feliciano Sr. testified that he paid Appellant $400 to install a transmission in his car. Feliciano subsequently came to believe the transmission was faulty, and sought a refund for his $400 payment. This dispute festered for several months, culminating in the incident that forms the basis of the charges against Appellant.

On February 5, 2014, Nilzon and his son were on the block of Appellant's home when they saw Appellant outside and demanded a refund. Appellant responded by retrieving a firearm from his home and telling the Felicianos that he was not going to pay them, so they should leave or he would kill them. The Felicianos decided to leave, but quickly changed their mind.

As they walked back towards Appellant's home a few minutes later, they saw Appellant's co-defendant and purported son-in-law, Emmanuel Sanchez, standing on Appellant's front porch brandishing an AK-47 rifle. The Felicianos indicated that they simply wanted their money back. Sanchez responded by firing the AK-47 at them. The Felicianos ran and managed to escape without being struck by any bullets.

The Felicianos called the police. They were able to make a positive identification of Sanchez at his house later that same day, and Sanchez was arrested. Nilzon subsequently identified Appellant from a photo array. Appellant absconded but was eventually arrested.

On May 8, 2014, the Commonwealth sought and obtained indictments against Appellant via an indicting grand jury for simple assault, terroristic threats, recklessly endangering another person, possessing instruments of crime, and three (3) violations of the Uniform Firearms Act: persons not to possess, use, manufacture, control, sell or transfer firearms (VUFA § 6105), firearms not to be carried without a license (VUFA § 6106), and carrying firearms on public streets or public property in

Philadelphia (VUFA § 6108).[2] On June 18, 2014, the Commonwealth filed an information charging Appellant with those crimes. On January 29, 2015, the Commonwealth filed a motion to amend the bills of information against Appellant under Pa.R.Crim.P. 564. [The trial court] denied the Commonwealth's motion on January 30, 2015, but later allowed the Commonwealth more time to reconvene the indicting grand jury and attempt to secure additional indictments against Appellant.

The grand jury reconvened on February 17, 2015, and indicted Appellant on two (2) additional charges, attempted murder and conspiracy to commit murder.[3] The Commonwealth subsequently filed an information adding those indictments to the charges filed against Appellant. Appellant challenged the new indictments through both a Pa.R.Crim.P. 600 motion as well as a motion to quash. [The trial court] denied both of Appellant's motions. Appellant was then tried by a jury alongside his co-defendant, Emmanuel Sanchez. On May 7, 2015, the jury found Appellant guilty of VUFA § 6105, VUFA § 6106, VUFA § 6108, possessing instruments of crime, and conspiracy to commit murder. On October 3, 2018, after a series of continuances, [the trial court] sentenced Appellant to an aggregate term of four-and-a-half (4½) to nine (9) years of confinement, with credit for time served.

On October 31, 2018, Appellant filed a timely notice of appeal to the Superior Court of Pennsylvania, challenging [the trial court's] decision to allow the Commonwealth to add bills of information after the initial grand jury proceeding and the sufficiency of the evidence for his conviction of conspiracy to commit murder. [The trial court] filed a 1925(a) opinion on August 20, 2019, in which it concluded that Appellant's challenges were without merit. On January 17, 2020, the Superior Court dismissed Appellant's appeal for the failure of his counsel, James F. Berardinelli, [Esq.,] to file an appellate brief on Appellant's behalf. On January 18, 2020, Appellant's counsel filed a motion to reinstate Appellant's appellate rights *nunc pro tunc*. On February 11, 2020, [the trial

---

[2] 18 Pa.C.S. §§ 2701(a), 2706(a), 2705, 907(a), 6105(a), 6106(a), and 6108, respectively.

[3] 18 Pa.C.S. §§ 901(a), 2502 and 903(a), 2502, respectively.

court] granted the motion and reinstated Appellant's appellate rights.

On February 17, 2020, Appellant filed a second timely notice of appeal to the Superior Court of Pennsylvania. [The trial court] reissued its 1925(a) opinion on March 6, 2020, again concluding that Appellant's challenges were without merit. On April 21, 2021, the Superior Court affirmed Appellant's judgment of sentence. [**See Commonwealth v. Serrano**, 705 EDA 2020, 706 EDA 2020, 2021 WL 1561573 (Pa. Super. filed Apr. 21, 2021) (unpublished mem.) (**Serrano I**).] Appellant subsequently filed a petition for allowance of appeal with the Supreme Court of Pennsylvania on May 21, 2021, which was denied on October 14, 2021. [**See Commonwealth v. Serrano**, 264 A.3d 751 (Pa. 2021) (**Serrano II**). Appellant did not file a petition for writ of *certiorari* with the Supreme Court of the United States.]

Appellant filed the instant timely PCRA petition on November 12, 2021, claiming that his convictions or sentence resulted from a violation of the Pennsylvania and United States Constitutions and ineffective assistance of counsel. On January 5, 2022, [the PCRA court] permitted James F. Berardinelli[, Esq.,] to withdraw as counsel and appointed Matthew Sullivan[, Esq.,] to serve as PCRA counsel for Appellant. Appellant, through newly appointed PCRA counsel, filed an amended PCRA petition on May 22, 2022. In his amended PCRA petition, Appellant claimed his trial counsel was ineffective for failing to address the lack of a ballistics report in his closing argument and for failing to investigate witnesses Appellant told him about.

On June 24, 2022, Appellant's PCRA counsel filed a motion for leave to further amend Appellant's PCRA petition and add an additional claim that Appellant's trial counsel was ineffective for failing to object to the testimony of individuals with the Philadelphia Police Department, who offered expert opinion testimony about fired cartridge casings despite not being qualified as experts. On July 1, 2022, [the PCRA court] granted the motion and permitted the amendment of Appellant's PCRA petition. On August 20, 2022, Appellant's PCRA counsel filed a memorandum of law in support of Appellant's amended PCRA petition detailing his ineffective assistance of counsel claims and requesting [the PCRA court] order a new trial.

On September 6, 2022, the Commonwealth filed a letter brief in response to Appellant's amended PCRA petition. The

Commonwealth argued that all of Appellant's claims were meritless and requested that [the PCRA court] dismiss Appellant's PCRA petition without an evidentiary hearing. On October 19, 2022, [the PCRA court] held a brief hearing [for which] Appellant was present[]. [The PCRA court] stated that it had reviewed all filings submitted by Appellant's PCRA counsel and the Commonwealth as well as the notes of testimony from Appellant's jury trial. [The PCRA court] then explained why Appellant was not due any relief on the three (3) claims presented in his amended PCRA petition. At the conclusion of the hearing, [the PCRA court] notified Appellant in open court that his PCRA petition was dismissed but that he had the right to file an appeal with the Superior Court of Pennsylvania. [The PCRA court] also issued an order on October 19, 2022, formally dismissing Appellant's PCRA petition.

On October 25, 2022, Appellant filed a timely notice of appeal from [the PCRA court's] order dismissing his PCRA petition. On October 26, 2022, Appellant's PCRA counsel, Matthew Sullivan, [Esq.,] filed an application to withdraw as counsel. On the same date, [the PCRA court] issued an order removing [Attorney] Sullivan and appointing Daniel A. Alvarez[, Esq.,] as counsel for Appellant's PCRA appeal. [The PCRA court] also entered an order on October 27, 2022, directing Appellant to file a concise statement of errors complained of on appeal pursuant to Pa. R.A.P. 1925(b). On November 15, 2022, through his new PCRA appellate counsel, Appellant filed with [the PCRA court] a [Rule] 1925(b) statement of errors complained of on appeal.

PCRA Ct. Op., 3/22/23, at 1-5 (citations and footnotes omitted and formatting altered). The PCRA court filed a Rule 1925(a) opinion addressing Appellant's claims.

On appeal, Appellant raises the following claims for our review:

1. On direct appeal, was appellate counsel ineffective for failing to adequately brief issues regarding the Commonwealth's adding bills of information for conspiracy to commit murder after representing to the [indicting grand jury], which violated [] Appellant's due process rights.[sic] The Superior Court held in its unpublished memorandum opinion that these arguments were waived for lack of development in the argument section

of the brief. Moreover, PCRA counsel was ineffective for not raising this in an amended petition.[]

2. Was trial counsel ineffective for failing to object to certain testimony from both Officer John Durando and Detective Darren Lindsey who improperly provided expert-type testimony as to the size/caliber of gun that was purportedly used by co-defendant, based on the size of [fired cartridge casings (FCCs)] recovered at the scene. Appellant asserts that there was no reasonable basis for this omission that was prejudicial to Appellant as he was found guilty of conspiracy to commit murder, and there is reasonable probability that had such improper testimony not been allowed at trial, [] Appellant would have been found not guilty of both counts of conspiracy to commit murder[.]

Appellant's Brief at 8 (citations omitted and some formatting altered).

Our review of the denial of PCRA relief is limited to "whether the record supports the PCRA court's determination and whether the PCRA court's decision is free of legal error." *Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa. Super. 2014) (citations omitted). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." *Commonwealth v. Mitchell*, 105 A.3d 1257, 1265 (Pa. 2014) (citation omitted); *see also Commonwealth v. Davis*, 262 A.3d 589, 595 (Pa. Super. 2021) (stating that "[t]his Court grants great deference to the findings of the PCRA court if the record contains any support for those findings" (citation omitted)).

When reviewing a claim of ineffective assistance of counsel, we are governed by the following standard:

[T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

We have explained that a claim has arguable merit where the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.

The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043-44 (Pa. Super. 2019) (citations omitted and formatting altered).

In his first issue, Appellant argues that direct appeal counsel was ineffective for failing to adequately develop an argument concerning the Commonwealth's amendments to the bills of information prior to trial. Appellant's Brief at 18. Specifically, Appellant argues that he was prejudiced when the Commonwealth was permitted to reconvene the indicting grand jury

to obtain indictments for attempted murder and conspiracy to commit murder. *Id.* at 27 (citing *Commonwealth v. Bricker*, 882 A.2d 1008 (Pa. Super. 2005)). Appellant further argues that PCRA counsel was also ineffective for failing to raise this issue in an amended PCRA petition.[4] *Id.*

When a defendant claims that current counsel was ineffective for failing to challenge prior counsel's effectiveness, the defendant must present a layered claim of ineffectiveness. *See Commonwealth v. McGill*, 832 A.2d 1014, 1022-23 (Pa. 2003).

This Court has explained:

Where the defendant asserts a layered ineffectiveness claim he must properly argue each prong of the three-prong ineffectiveness test for each separate attorney.

Layered claims of ineffectiveness are not wholly distinct from the underlying claims, because proof of the underlying claim is an essential element of the derivative ineffectiveness claim. In determining a layered claim of ineffectiveness, the critical inquiry is whether the first attorney that the defendant asserts was ineffective did, in fact, render ineffective assistance of counsel. If that attorney was effective, then subsequent counsel cannot be deemed ineffective for failing to raise the underlying issue.

*Commonwealth v. Rykard*, 55 A.3d 1177, 1190 (Pa. Super. 2012) (citations omitted and formatting altered), *abrogated in part by Bradley*, 261 A.3d 381. However, it is well settled that "counsel cannot be deemed ineffective for

---

[4] Our Supreme Court has adopted a rule allowing PCRA petitioners to "raise claims of ineffective PCRA counsel at the first opportunity, even if on appeal." *Commonwealth v. Bradley*, 261 A.3d 381, 405 (Pa. 2021). Therefore, although Appellant did not raise this claim in his PCRA petition, the issue is properly before us.

failing to raise a meritless claim." ***Commonwealth v. Treiber***, 121 A.3d 435, 445 (Pa. 2015) (citation omitted).

As this Court has previously stated:

The law of the case doctrine refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter. . . . The various rules which make up the law of the case doctrine serve not only to promote the goal of judicial economy . . . but also operate (1) to protect the settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end.

***Commonwealth v. Gacobano***, 65 A.3d 416, 419-20 (Pa. Super. 2013) (citations omitted). Under the law of the case doctrine, "when an appellate court has considered and decided a question submitted to it upon appeal, it will not, upon a subsequent appeal on another phase of the case, reverse its previous ruling even [if] convinced it was erroneous." ***Id.*** (citations omitted). Further, when this Court finds an issue waived on direct appeal but then alternatively concludes that the issue is meritless, the ruling on the merits is a valid holding that constitutes the law of the case with respect to that issue. ***See Commonwealth v. Reed***, 971 A.2d 1216, 1220 (Pa. 2009).

Here, as noted previously, the PCRA court concluded that Appellant's challenge to the bills of information was meritless. ***See*** PCRA Ct. Op. at 11. Although this Court concluded that Appellant failed to adequately develop his claim on direct appeal, this Court also found "no error in the trial court's

analysis or in its conclusion." ***Serrano I***, 2021 WL 1561573 at *4. This Court further concluded that, to the extent Appellant relied on ***Bricker*** and ***Commonwealth v. Williams***, 166 A.3d 460 (Pa. Super. 2017) (holding that "the Commonwealth's failure [] to request an amendment to the information until the beginning of trial, and the [trial] court's failure to rule on this motion until the end of trial, deprived defense counsel of any realistic opportunity to prepare or present a defense to this new and different charge during trial"), both cases were distinguishable from Appellant's case. Specifically, this Court explained:

> In any event, as the Commonwealth points out, both ***Bricker*** and ***Williams*** are readily distinguishable from this case. ***Bricker*** involved a mid-trial amendment to the bills of information which resulted in the appellant not "hav[ing] knowledge of the alleged criminal conduct prior to trial." ***Bricker***, 882 A.2d at 1020-1021. Similarly, in ***Williams***, the Commonwealth did not move to amend the information until the beginning of trial and the court did not rule on the motion until the end of the trial, at which point the court granted the motion to amend. ***See Williams***, 166 A.3d at 464.
>
> Unlike both ***Bricker*** and ***Williams***, the addition of the attempted murder and conspiracy charges here took place months prior to trial. As the Commonwealth observes, the indictments were added by the reconvening grand jury which necessarily occurred prior to trial. Accordingly, as the trial court explained, Appellant had "sufficient time to prepare for trial once the new indictments," which "were not materially different from those initially presented to the [indicting grand jury]," were added. Trial Court Opinion, 3/6/20, at 15. The trial court therefore concluded that Appellant had not suffered unfair prejudice by the addition of the new charges. Appellant has simply not shown how ***Bricker*** or ***Williams*** compels a contrary conclusion or that he is entitled to any relief on the basis of this claim.

***Serrano I***, 2021 WL 1561573 at *5 (some citations omitted).

In its Rule 1925(a) opinion, the PCRA court concluded as follows:

The Superior Court of Pennsylvania stated that it found "no error in the trial court's analysis or in its conclusion." [**Serrano I**, 2021 WL 1561573 at *4.] Accordingly, while Appellant's direct appeal counsel failed to adequately develop his argument regarding the additional bills of information, the claim itself was without merit. Appellant's appellate counsel therefore cannot be found ineffective for failing to properly raise and develop a meritless claim. Since Appellant has not shown that his direct appeal appellate counsel was ineffective in this regard, his claim that his PCRA counsel was ineffective for not raising the issue in an amended PCRA petition necessarily also fails. Appellant's first set of claims is without merit.

PCRA Ct. Op. at 11.

Following our review, we find no error in the PCRA court's legal conclusions. **See Lawson**, 90 A.3d at 4. Indeed, although this Court concluded that Appellant waived this issue on direct appeal, the Court ultimately agreed with the trial court that the underlying claim was meritless and concluded that it saw "no error in the trial court's analysis or in its conclusion." **Serrano I**, 2021 WL 1561573 at *4. Under the law of the case doctrine, we are bound by the **Serrano I** Court's legal conclusions. **See Reed**, 971 A.2d at 1220; **Gacobano**, 65 A.3d at 419-20. Therefore, because the underlying claim is meritless, neither direct appeal counsel nor PCRA counsel were ineffective for failing to raise this claim. **See Treiber**, 121 A.3d at 445; **Sandusky**, 203 A.3d at 1043. Accordingly, Appellant is not entitled to relief on this issue.

In his second issue, Appellant contends that trial counsel provided ineffective assistance due to his failure to object to "expert-type" testimony

from Philadelphia Police Officer John Durando and Philadelphia Police Detective Darren Lindsey regarding FCCs. Appellant's Brief at 35-36. Appellant concedes that while it was appropriate for these witnesses to testify regarding what they observed and recovered from the scene, Officer Durando and Detective Lindsey improperly gave "opinion as to the type of gun that was involved in producing such ballistics evidence." *Id.* at 36 (emphasis omitted). Appellant further argues that, "[t]his is clearly technical type testimony, implying to the jury that the FCCs came from the AK-47 that was never recovered." *Id.*

Rule 701 of the Pennsylvania Rules of Evidence provides that a non-expert witness may provide lay opinion testimony if the opinion is:

> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of [Pa.R.E.] 702 [(governing testimony by expert witnesses)].

Pa.R.E. 701.

This Court has held that:

> Generally, lay witnesses may express personal opinions related to their observations on a range of subject areas based on their personal experiences that are helpful to the factfinder. Lay testimony has been defined as testimony intended to describe something that jurors otherwise had not been able to experience for themselves, by drawing upon the sensory and experiential observations that the witness made firsthand.

*Commonwealth v. Harper*, 230 A.3d 1231, 1242 (Pa. Super. 2020) (citations omitted and formatting altered); *see also* Pa.R.E. 602 (stating that a witness may testify regarding "a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony").

In the instant case, the PCRA court reached the following conclusion:

The opinions offered during the testimonies of Officer Durando and Detective Lindsey were proper under Pennsylvania Rule of Evidence 701. Their descriptions of the fired cartridge casings found at and recovered from the 3200 block of North Phillip Street were rationally based on their personal perceptions and provided to assist the jury in understanding the size of the casings. Officer Durando described the fired cartridge casings as bigger than the bullets in his service weapon and identified them as rifle casings based on his familiarity with rifles. Detective Lindsey only described them as large in comparison to his own service weapon.

Officer Durando and Detective Lindsey thus only testified to observations rationally based on their perceptions, which was informed by their familiarity with firearms, bullets, and fired cartridge casings from their careers in the Philadelphia Police Department. Neither Officer Durando nor Detective Lindsey relied on scientific, technical, or other specialized knowledge within the scope of Pennsylvania Rule of Evidence 702. Instead, as [the PCRA court] stated when dismissing Appellant's PCRA petition, their testimony was analogous to a lay witness opining "about how fast a car may be going" based on their experience "driving cars and observing cars." Appellant's claim of ineffective assistance of counsel is therefore without arguable merit.

PCRA Ct. Op. at 12-13 (citation omitted).

Following our review of the record, we find that the PCRA court's factual findings are supported by the record and that its legal conclusions are free

- 13 -

from error. **See Lawson**, 90 A.3d at 4. The record supports the trial court's conclusion that the opinion testimony from Officer Durando and Detective Lindsey was based on their own observations related to their personal experience with firearms. **See Harper**, 230 A.3d at 1242; **see also** Pa.R.E. 701. Specifically, Officer Durando stated that he observed "several fired cartridge casings, very large rifle casings" which were similar in size to a "full cigarette."[5] N.T. Trial, 5/5/15, at 155, 158. Detective Lindsey testified that he observed casings from a "large caliber gun," and that the casings he observed were larger than the casings from the handgun he carries. N.T. Trial, 5/6/16, at 22. Therefore, Appellant's ineffectiveness claim has no arguable merit. **See Sandusky**, 203 A.3d at 1043. For these reasons, Appellant is not entitled to relief, and we affirm the PCRA court's order denying his PCRA petition.

Order affirmed. Jurisdiction relinquished.

---

[5] By comparison, Officer Durando testified that the shell casings for his service weapon, a .45 caliber Glock, are approximately the size of a cigarette butt. N.T. Trial, 5/5/15, at 157-58.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/14/2024